ACCEPTED
05-15-00246-CV
FIFTH COURT OF APPEALS
DALLAS, TEXAS
4/30/2015 4:26:18 PM
LISA MATZ
CLERK

## NO. 05-15-00246-CV

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS
4/30/2015 4:26:18 PM
LISA MATZ
Clerk

# In the Fifth Court of Appeals
# Dallas, Texas

**The University of Texas Southwestern Medical Center,**
*Appellant,*

**vs.**

**Verba Klingsick, Diana Klingsick and Jana Carrasco, Individually and on Behalf of the Estate of William R. Klingsick, Deceased,**
*Appellees.*

**On Appeal from the 95TH Judicial District of Dallas County, Texas
Trial Court Cause No. DC-12-07946
The Honorable Ken Molberg, Judge Presiding**

# APPELLANT'S BRIEF

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil
Litigation

KARA KENNEDY
Chief, Tort Litigation Division

JASON WARNER
Assistant Attorney General
State Bar No.: 24028112
Tort Litigation Division, MC 030
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2197
FAX: (512) 457-4430
jason.warner@texasattorneygeneral.gov
*Counsel for Appellant*

**ORAL ARGUMENT REQUESTED**

## IDENTITY OF PARTIES & COUNSEL

Appellant certifies that the following is a complete list of the parties, attorneys, and any other person who has any interest in the outcome of this lawsuit:

**Presiding trial judge:**
Honorable Ken Molberg
Judge, 95th District Court
George L. Allen, Sr. Court Bldg.
600 Commerce Street, Box 640
6th Floor New Tower
Dallas, TX 75202
214.653.6609 – phone

**Appellant:**
**The University of Texas Southwestern Medical Center**

**Attorney of Record:**
Jason Warner
Assistant Attorney General
State Bar No. 24028112
Tort Litigation Division, MC 030
P.O. Box 12548, Capitol Station
Austin, Texas  78711-2548
(512) 463-2197
FAX:  (512) 457-4430
jason.warner@texasattorneygeneral.gov

**Appellees:**
**Verba Klingsick, Diana Klingsick and Jana Carrasco, Individually and on Behalf of the Estate of William R. Klingsick, Deceased**

**Attorney of Record:**
Andrew B. Sommerman
SOMMERMAN & QUESADA, L.L.P.
3811 Turtle Creek Boulevard, Suite 1400
Dallas, TX 75219-4461
214.720.0720 - phone
214.720.0184 - fax
State Bar No. 18842150
andrew@textrial.com

ii

**Other Parties To The Underlying Suit, But Not A Party To This Appeal:**

### Southwest Transplant Alliance

**Attorney of Record:**    Gary Lykins
THE BERRY FIRM, P.L.L.C.
1412 Main Street, Suite 2300
Dallas, TX  75202
214.915.9806 – direct no.
214.752.8250 – fax
State Bar No. 12715600
lykins@berryfirm.com

### Vitrolife, Inc.

**Attorney of Record:**    Tim Ryan
SCHELL COOLEY LLP
15455 Dallas Parkway, Suite 550
Addison, TX  75001
(214) 665-2005 – phone
(214) 754-0060 – Fax
State Bar No. 17483600
tryan@schellcooley.com

## <u>REQUEST FOR ORAL ARGUMENT</u>

Pursuant to rules 39.1 and 39.7 of the Texas Rules of Appellate Procedure, Appellant hereby requests oral argument in this case.

# TABLE OF CONTENTS

                                                                    **PAGE**

IDENTITY OF PARTIES & COUNSEL .................................................................. ii

REQUEST FOR ORAL ARGUMENT ................................................................. iv

TABLE OF CONTENTS ...................................................................................... v

INDEX OF AUTHORITIES .............................................................................. vii

STATEMENT OF THE CASE ........................................................................... xii

STATEMENT OF JURISDICTION ................................................................... xiv

ISSUES PRESENTED ....................................................................................... xv

APPELLANT'S BRIEF ....................................................................................... 1

STATEMENT OF FACTS ................................................................................... 2

    A. Introduction ............................................................................................ 2
    B. Organs and Medication Provided by STA ............................................. 3
    C. STA Solely Responsible to Preservation Solution Mixing and
       Preparation ............................................................................................. 3
    D. Mr. Klingsick's Transplant .................................................................... 5
    E. Preservation Solution Questioned ......................................................... 6
    F. STA Acknowledgement of the Breach of the Standard of Care ................ 10

SUMMARY OF THE ARGUMENT ................................................................. 12

ARGUMENT ..................................................................................................... 13

    A. Standard of Review & Sovereign Immunity ........................................ 13

ISSUE I:   DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN DENYING UTSWMC'S PLEA TO THE JURISDICTION WHEN APPELLEES DID NOT GIVE UTSWMC FORMAL NOTICE OF THEIR CLAIMS AND UTSWMC DID NOT HAVE ACTUAL NOTICE OF THEIR CLAIMS WITHIN SIX MONTHS FROM THE DATE OF INCIDENT? ..............................16

A.  Quick Answer ...............................................................................16
B.  The Statute: TTCA Notice Requirement for a Waiver of Sovereign Immunity ........................................................................................16
C.  The Texas Supreme Court & Actual Notice ...................................17
D.  *McQueen* Opinion & Actual Notice in Health Care Liability Cases ...........20
E.  UTSWMC Did Not Have the Required "Subjective Signal".........21
F.  Conclusion ...................................................................................24

ISSUE II:  DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN DENYING UTSWMC'S PLEA TO THE JURISDICTION WHEN NO TANGIBLE PERSONAL PROPERTY WAS NEGLIGENTLY USED BY ITS EMPLOYEES DURING THE ALLEGED NEGLIGENT MEDICAL TREATMENT IN QUESTION? ..................................................................25

A.  Quick Answer ...............................................................................25
B.  TTCA §101.021's Waiver of Sovereign Immunity Requirements .........25
C.  Appellees' Negligent Use Allegations Concerning Mr. Klingsick's Lung Transplant ............................................................................26
D.  The TTCA Waiver of Immunity Requires a Negligent Use of Tangible Personal Property ..........................................................28
E.  Appellees' True Allegations Fail to Assert a Waiver of Sovereign Immunity ......................................................................................32
F.  Conclusion ...................................................................................33

PRAYER ..........................................................................................................33

CERTIFICATE OF COMPLIANCE.....................................................................35

CERTIFICATE OF SERVICE ................................................................... 35, 36

APPENDIX .......................................................................................................37

vi

# INDEX OF AUTHORITIES

**CASES**                                                                                      **PAGE**

*Arnold v. Univ. of Texas Southwestern Med. Ctr.*,
  279 S.W.3d 464 (Tex. App.—Dallas 2009, no pet.). .................................... 29-31

*Bourne v. Nueces County Hosp. Dist.,*
  749 W.W.2d 630 (Tex. App.—Corpus Christi 1988,
  writ denied)..........................................................................................................18

*Cathey v. Booth*,
  900 S.W.2d 339 (Tex. 1995). ..................................................................... 18, 24

*City of Corsicana v. Stewart,*
  249 S.W.3d 412 (Tex. 2008) ....................................................................... 26, 41

*City of Dallas v. Carbajal*,
  324 S.W.3d 537 (Tex. 2010) ................................................................. 19, 24, 29

*City of Garland v. Rivera*,
  146 S.W.3d 334 (Tex. App.—Dallas 2004, no pet.)..........................................31

*City of Houston v. Harris*,
  192 S.W.3d 167 (Tex. App.– Houston [14th Dist.] 2006, no pet.) ......................26

*City of North Richland Hills v. Friend*,
  370 S.W.3d 369 (Tex. 2012) ............................................................................14

*Colquitt v. Brazoria County*,
  324 S.W.3d 539 (Tex. 2010). ...........................................................................17

*County of Cameron v. Brown*,
  80 S.W.3d 549 (Tex.2002) ...............................................................................14

*Dallas Area Rapid Trans. v. Edwards*,
  171 S.W.3d 584 (Tex. App.—Dallas 2005, pet. denied) ...................................30

*Dallas Area Rapid Transit v. Whitley*,
104 S.W.3d 540 (Tex. 2003). ....................................................... 26, 30

*Dallas Cty. MHMR v. Bossley*,
968 S.W.2d 339 (Tex. 1998) ...............................................................26

*Dung Ngoc Huynh v. Washington*,
339 S.W.3d 309 (Tex. App.—Dallas 2011, no pet.). ................................... 14, 15

*El Paso MHMR v. Crissman*,
241 S.W.3d 582 (Tex. App.—El Paso 2007, no pet.) ...............................30

*Franka v. Velasquez*,
332 S.W.3d 367 (Tex. 2011) ....................................................... 14, 15

*Gipson v. City of Dallas*,
247 S.W.3d 465 (Tex. App.—Dallas 2008, pet. denied) .....................................29

*Griffin v. Hawn*,
341 S.W.2d 151 (Tex. 1960) ...............................................................13

*Harris County v. Cabazos*,
177 S.W.3d 105 (Tex. App.-- Houston [1st Dist.] 2005, no pet.) ........................14

*Hosner v. DeYoung*,
1 Tex. 764 (1847) ...............................................................13

*Kamel v. Univ. of Texas Health Sci. Ctr. at Houston*,
333 S.W.3d 676 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).................30

*Kerrville State Hospital v. Clark,*
923 S.W. 2d. 582 (Tex. 1996) ....................................................... 29, 30

*Mission C.I.S.D. v. Garcia,*
253 S.W.3d 653 (Tex. 2008) ....................................................... 14, 15

*Putthoff v. Ancrum*,
934 S.W.2d 164 (Tex. App.—Fort Worth 1996, writ denied) ..............................17

viii

*Redden v. Denton Cty*,
   335 S.W.3d 743 (Tex. App.– Fort Worth 2011, no pet. h.) .......................... 14, 30

*San Antonio State Hosp. v. Cowan,*
   128 S.W.3d 244 (Tex. 2004). ...................................................................28

*Somervell County Healthcare Authority v. Sanders,*
   169 S.W.3d 724 (Tex. App. - Waco 2006, no pet.)..............................................30

*State v. Tennison*,
   509 S.W.2d 560 (Tex. 1974) .................................................................26

*Streetman v. Univ. of Tex. Health Sci. Ctr. at San Antonio*,
   952 S.W.2d 53 (Tex.App.-- San Antonio 1997, writ denied) .............................17

*Tex. Dep't of Criminal Justice v. Simons*,
   140 S.W.3d 338 (Tex. 2004). ....................................................... 18, 24

*Tex. Dept. of Public Safety v. Petta*,
   44 S.W.3d 575 (Tex. 2001) ....................................................................14

*Tex. Dept. of Trans. v. Lueck*,
   290 S.W.3d 876 (Tex. 2009) ...................................................... 13, 15

*Tex. Dept. of Transp. v. Jones*,
   8 S.W.3d 636 (Tex. 1999). ...................................................................14

*Texas A&M Univ. v. Bishop*,
   156 S.W.3d 580 (Tex. 2005) ................................................................30

*Texas A&M Univ. v. Koseoglu*,
   233 S.W.3d 835 (Tex. 2007) ................................................................14

*Texas Dep't of Criminal Justice v. Miller,*
   51 S.W.3d 583 (Tex. 2001). ....................................................... 15, 28, 29

*Texas Dept. of Crim. Just. v. Hawkins,*
169 S.W.3d 529 (Tex. App.—Dallas 2005, no pet.) ...................................... 30, 31

*Texas Dept. of Parks & Wildlife v. Miranda,*
133 S.W.3d 217 (Tex. 2004) ................................................................. 13, 14

*Texas Dept. of Transp. v. Able,*
35 S.W.3d 608 (Tex. 2000) ...................................................................26

*Texas Tech Health Sci. Ctr. v. Ward,*
280 S.W.3d 345 (Tex. App.– Amarillo 2008, pet. denied). ...............................29

*Timmons v. Univ. Med. Ctr.,*
331 S.W.3d 840 (Tex. App.—Amarillo 2011, no pet.).......................................17

*TNRCC v. IT-Davy,*
74 S.W.3d 849 (Tex. 2002) ...................................................................13

*Univ. of Tex. Health Sci. Ctr. v. Schroeder,*
190 S.W.3d 102 (Tex. App.-- Houston [1st Dist.] 2005, no pet.)........................30

*Univ. of Texas Health Sci. Ctr. at Houston v. McQueen,*
431 S.W.750 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ................... 20, 24

*Univ. of Texas M.D. Anderson Cancer Ctr. v. King,*
329 S.W.3d 876 (Tex. App.—Houston [14th Dist.] 2010) ......................... 29, 30

*Univ. of Texas Medical Branch at Galveston v. Tatum,*
389 S.W.3d 457 (Tex. App.—Houston [1st Dist.] 2012, no pet.........................30

*Univ. of Texas Medical Branch at Galveston v. York,*
871 S.W.2d 175 (Tex. 1994) ...................................................................28

*Univ. of Texas Medical Branch v. Kai Huo Qi,*
402 S.W.3d 374 (Tex. App.-- Houston [14th Dist.] 2013, no pet.) .............. 29, 30

*Univ. of Texas Southwestern Med. Ctr. v. Arancibia,*
324 S.W.3d 544 (Tex. 2010) ...................................................................19

x

*Univ. of Texas Southwestern Med. Ctr. v. Loutzenhiser*,
   140 S.W.3d 351 & FN 5 (Tex. 2004)................................................................15

**STATUTES**

Tex. Civ. Prac. & Rem Code §51.014(a)(8). ....................................................... xiv

Tex. Civ. Prac. & Rem. Code Ann §§ 101.001(2) & 101.021 ...............................28

Tex. Civ. Prac. & Rem. Code Ann. §§ 101.021 & 101.022 ..................................26

Tex. Civ. Prac. & Rem. Code § 101.101. ........................................................ 15, 17

Tex. Civ. Prac. & Rem.Code § 101.001(3)(A);...................................................15

Tex. Educ. Code Ann. §§ 65.02(a)(7) & 74.101 (West 2014) ..............................15

Tex. Govt. Code Ann. §311.034 .........................................................................17

## STATEMENT OF THE CASE

**Nature of the Case:** This is a health care liability suit brought under the Wrongful Death Statute, Chapter 71(a), the Texas Survival Statute, Chapter 71(b), the Medical Liability Act, Chapter 74, and the Texas Tort Claims Act, Chapter 101, of the Texas Civil Practice and Remedies Code. William R. Klingsick underwent a lung transplant surgery at UTSWMC on or about July 23, 2010, and died two days later as a result of complications from the transplant. The procurement and implantation of donor lungs into Mr. Klingsick were done by Southwest Transplant Alliance (STA) and a faculty cardiothoracic surgeon at The University of Texas Southwestern Medical Center (UTSWMC). Appellees Klingsick complain of negligent healthcare and treatment provided by UTSWMC in connection with the preservation solution that was mixed and provided by STA and used for the transportation of the lungs implanted in Mr. Klingsick. UTSWMC filed a plea to the jurisdiction, asserting Appellees failed to provide timely notice of their claims under §101.101 and that no use of tangible personal property caused injury to Appellees under §101.021 of the TTCA. As a result, their suit was barred as there is no waiver of sovereign immunity, depriving the trial court of subject-matter jurisdiction. The trial court denied the plea.

**Parties in the Trial Court:** The University of Texas Southwestern Medical Center, Appellant, was the Defendant in the trial court. The Klingsicks, Appellees, were the Plaintiffs. (CR1518-30).

**Trial Court:** The 95th Judicial District Court of Dallas County, Texas, The Honorable Ken Molberg, Presiding Judge. (CR 1301).

**Trial Court Disposition:** An Order denying UTSWMC's plea to the jurisdiction was entered on March 1, 2015 (CR 2459-60)(App. A).

**Abbreviations:** Throughout this Brief, the original Clerk's Record will be cited as "CR," and the Reporter's Record from the hearing of February 13, 2015 will be cited as "RR." Where applicable, documents located in the Appendix will be cited to the record and the appendix as "App."

## STATEMENT OF JURISDICTION

This Court has jurisdiction over this appeal pursuant to Section 51.014(a)(8) of the Texas Civil Practice and Remedies Code, which provides an interlocutory appeal from an order of a district court that denies a plea to the jurisdiction filed by a governmental unit. Tex. Civ. Prac. & Rem Code §51.014(a)(8) (West 2015)(App. B). This appeal is further accelerated pursuant to the Texas Rules of Appellate Procedure. Tex. R. App. P. 28.1.

# ISSUES PRESENTED

ISSUE I:     DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN DENYING UTSWMC'S PLEA TO THE JURISDICTION WHEN APPELLEES DID NOT GIVE UTSWMC FORMAL NOTICE OF THEIR CLAIMS AND UTSWMC DID NOT HAVE ACTUAL NOTICE OF THEIR CLAIMS WITHIN SIX MONTHS FROM THE DATE OF INCIDENT?

ISSUE II:    DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN DENYING UTSWMC'S PLEA TO THE JURISDICTION WHEN NO TANGIBLE PERSONAL PROPERTY WAS NEGLIGENTLY USED BY ITS EMPLOYEES DURING THE ALLEGED NEGLIGENT MEDICAL TREATMENT IN QUESTION?

# In the Fifth Court of Appeals
# Dallas, Texas

**The University of Texas Southwestern Medical Center,**
*Appellant,*
**vs.**

**Verba Klingsick, Diana Klingsick and Jana Carrasco, Individually and on Behalf of the Estate of William R. Klingsick, Deceased,**
*Appellees.*

**On Appeal from the 95TH Judicial District of Dallas County, Texas**
**Trial Court Cause No. DC-12-07946**
**The Honorable Ken Molberg, Judge Presiding**

# APPELLANT'S BRIEF

TO THE HONORABLE FIFTH COURT OF APPEALS:

Pursuant to Rule 38.1 of the Texas rules of Appellant Procedure, Appellant The University of Texas Southwestern Medical Center ("UTSWMC"), in the above styled and numbered appeal, files this Appellant's Brief and would respectfully show that the Court should reverse the order denying Appellant's Plea to the Jurisdiction and render judgment dismissing the case against Appellant for lack of subject matter jurisdiction.

1

## STATEMENT OF FACTS

### A.     Introduction

On July 23, 2010, William Klingsick underwent a bilateral lung transplant surgery at UTSWMC and died two days later due to complications from the attempted transplant.  (CR 2226-32, 2234).  Dr. Matthias Peltz, a faculty cardio-thoracic surgeon on UTSWMC, removed the lungs from the donor and participated in the implantation procedure of Mr. Klingsick.  (CR 2226-2232, 2239).  Mr. Klingsick suffered several different complications during the surgery, including graft dysfunction problems and/or reperfusion injuries, which can develop in up to 25 percent of lung transplant patients.  (CR 2276-77).  Appellees allege that these injuries were caused by the pH level of the fluid used to preserve the donor lungs during transportation was not maintained optimally. (CR 1518-30). This allegedly resulted in damage to the donor lungs that led to injuries and the death of Mr. Klingsick.  (CR 1518-30). They also allege that UTSWMC had actual notice of their claims within the six (6) months of the implantation surgery through the alleged knowledge Dr. Peltz had in January 2011 concerning how STA mixed the lung preservation solution at a subsequent lung procurement. (CR 1518-30; RR 17-25, 41).

**B.     Organs and Medication Provided by STA**

UTSWMC contracted with STA, an organ procurement organization, to provide organ procurement services for transplant candidates. (CR 642-54). Within the contract, UTSWMC and STA agreed that "Southwest Transplant Alliance will provide qualified medical personnel with specialized training in transplantation…and organ recovery and preservation, to perform organ procurement services." (CR 646).   UTSWMC and STA further agreed that "Southwest Transplant Alliance will provide medications, supplies, or devices for the medical evaluation…and management of the cadaveric donor."  (CR 646, 1155-56).

Dr. Marlon Levy, Medical Director of STA, testified that pursuant to the Transplant Agreement, STA was responsible for bringing and preparing all organ transport solutions used for organ procurement. (CR1128).  Dr. Levy additionally testified that it was reasonable for UTSWMC and its employees to rely on STA employees to prepare all organ transport solutions at the donor procurement hospital. (CR 1396).

**C.     STA Solely Responsible to Preservation Solution Mixing and Preparation**

James Cutler was the CEO of STA at the time of the lung procurement and transplant made the basis of this lawsuit. (CR 1396). The testimony of Mr. Cutler

establishes, in relevant part, the Organ Recovery Department of STA was in charge of mixing transplant solutions and the direct person responsible for such was Tammie Peterson, Director of Organ Recovery. (CR 1379). His testimony also established that the individuals who actually did the mixing of preservation solutions are the surgical coordinators that worked under Tammie Peterson. (CR 1379 – 80). Tammie Peterson was the person who was in charge of making sure the surgical coordinators were mixing the preservation solution correctly. (CR 1381). As Mr. Cutler also described in his testimony:

> In this instance a policy was in place and the concentration of Tham changed. We didn't catch that change in concentration and as a result we made a mistake and didn't change our policy and retrain our staff to the administration of the changed dosage and our organization admitted, you know, we made a mistake in that regard.

(CR 1382). Mr. Cutler also testified, "the dose [of THAM] changed one time. We [STA] didn't catch that change. We [at STA] didn't incorporate that change into our policy and procedure and because we didn't, we made a mistake." (CR 1382). Mr. Cutler also testified that "[b]ecause when informed of the change in the dosage, Tammie Peterson did not make the appropriate changes in the policy and practice." (CR 1389).

In his deposition testimony, Mr. Cutler additionally acknowledged that STA "takes responsibility for having missed the initial notification of the dosage

4

concentration and not incorporating that" into STA's policy. (CR 1420). He also acknowledged that STA regrets that "a mistake was made," that "it wasn't caught before [patients] got their transplant," and that "it could have been caught and it wasn't caught." (CR 1421). Mr. Cutler's testimony also describes that it was the STA's responsibility to make sure it had a correct policy and procedure. (CR 1394 – 95). Mr. Cutler likewise testified that employees of STA that mixed the solution in the field were instructed and trained by STA to follow STA's specific policies and procedures and not the package inserts contained with the containers of the solutions. (CR 1434 – 35).

## D.    Mr. Klingsick's Transplant

On or about July 23, 2010, Tina Reynolds, STA surgical coordinator, in conformance with the terms of the transplant agreement between STA and UTSWMC, traveled to the lung donor site to transport and prepare the lung preservation solution for the lungs that were implanted in Mr. Klingsick. (CR 1729, 1897 – 98, 1902). Tina Reynolds testified she did not follow the instructions on the bottle of THAM or the bag of Perfadex to mix the solutions. (CR 1897-98, 1908-10). Instead, Ms. Reynolds testified she mixed the preservation solution according to STA's protocol for this lung procurement and transplant. (CR 1897-98, 1908-10). She testified she prepared the transport solution to flush the lungs according to

STA's policy and flushed the lungs with the solution. (CR 1897 – 98, 1908, 1910, 1914).

Dr. Matthias Peltz, a faculty cardiothoracic surgeon at UTSWMC, was both the procuring surgeon involved in retrieving the donor lungs and the surgeon that participated in implanting the lungs into Mr. Klingsick. (CR 2239, 2269). Importantly, he did not mix the lung preservation fluid in question. (CR 2274, 974-75; Exh. O, Pg. 150:6 – 153:18; Exh. P, Pg. 329:15 – 330:4; 331:22 – 332:2). During Mr. Klingsick's surgery on July 23, 2010, the implanted lungs were procured and transported in the preservation solution mixed and prepared by STA. (CR763). Complications developed during the procedure and the preserved lungs could not be properly implanted into Mr. Klingsick. (CR 765 – 68, 839). He subsequently died from complications from this surgery on July 25, 2010. (CR 839, 2234). Dr. Peltz testified that he did not know at the time of Mr. Klingsick's surgery that there were any issues with the pH level of the preservation fluid that Ms. Reynolds mixed and prepared to transport the donor lungs. (CR 2274 – 75, 1900 – 01).

E.     **Preservation Solution Questioned**

On January 10, 2011, while performing a lung transplant for Baylor Medical Center and one of its patients, Dr. Peltz testified he decided to test the pH level of some residual preservation fluid using a blood-gas analyzer after that patient's

6

transplantation. (CR 2249 - 50). He testified his concern was that the preservation solution may have been too acidic, having a pH level below the optimal range for lung preservation, because the metabolism of the lungs produces more acid over time. (CR 2251-52). After the test was done, Dr. Peltz testified the blood-gas analyzer at Baylor Medical Center returned an out-of range result, meaning that the device could not register the pH level of the sample. (CR 2251). Dr. Peltz testified he was not sure how the blood-gas analyzer was calibrated and chalked up the out-of-range reading as possibly being too low (too acidic), below the optimal pH level of 7.4, not above. (CR 2251 - 52). He testified that the out-of-range reading was not indicative of anything wrong. (CR 2252). And although he later mentioned this reading in passing to his colleagues at UTSWMC, he testified that the out-of-range result did not motivate him to pursue the matter further as "[t]here was no reason to believe there was anything incorrect about the way the preservation solution was made." (CR 2252). His testimony was he had no reason to believe that there was anything wrong with the preservation solution being used or how it was mixed and prepared by STA. (CR 2252, 2276).

On or about January 25, 2011, Dr. Peltz went on a lung procurement for a patient on behalf of UTSWMC. (CR 691 – 94, 973, 2257). He testified that upon return and during the transplant of the lungs on January 26, 2011, he decided to send

a sample of the preservation solution to the hospital lab to test the pH level of the solution. (CR 973 – 74, 2239 – 2256). The result of that test indicated the pH level to be 8.7, which was alkalotic, or higher, than the optimal level of 7.4. (CR 973 – 75, CR 2413 – 15).

The following day on January 27, 2011, Dr. Peltz testified that he went on another lung procurement for another patient at Baylor Medical Center and while removing the donor lungs, he observed the STA surgical coordinator mixing and preparing the Perfadex and THAM. (CR 978). He testified that he observed the STA employee mixing the Perfadex with a bottle THAM that was smaller than he had seen in the past. (CR 978). Dr. Peltz asked to see the bottle and pointed out to the STA employee that the manufacturer's instructions directed that 0.3 ml of THAM be mixed into each liter of Perfadex. (CR 2260). The STA employee informed Dr. Peltz that he had been trained and instructed by STA to add 9.5 ml of THAM to each bag of Perfadex. (CR 691 – 94, 2260). Dr. Peltz testified he informed the STA employee that he should follow the manufacturer's instructions instead of the instructions provided by STA and proceeded with the lung procurement. (CR 978).

After his completion of the lung transplant on January 27, 2011, Dr. Peltz notified Tammie Peterson, the STA Director of Organ Recovery, of his discovery that the preservation solution mixture was being improperly prepared by STA

8

employees and suggested that STA follow the manufacturer's instructions. (CR 691 – 94, 1101 – 03, 2263). Dr. Peltz also asked STA how long it had been using bottles of THAM with instructions that 0.3 ml rather than 9.5 ml be mixed with the Perfadex. (CR 691 – 94, 1101 – 03, 2263). Dr. Levy, STA's Medical Director, confirmed in his testimony that on January 27, 2011, STA was informed by UTSWMC that STA staff were incorrectly mixing the lung preservation solution during a lung procurement procedure. (CR 1155).

On January 28, 2011, Janel Tedesco, the UTSWMC Administrative Transplant Director, emailed STA CEO Jim Cutler requesting that the mixing error be "addressed in a formal fashion at STA for performance improvement." (CR 1104 - 05). On February 17, 2011, STA completed an investigation and acknowledged a mixing error. (CR 673 – 89, 875). At this time, UTSWMC did not know that Mr. Klingsick was a patient that could have been affected by the mixing error. (CR 673 - 89).

On July 13, 2011, almost six months after UTSWMC requested an investigation, STA informed UTSWMC that it had confirmed that the wrong amount of THAM was mixed by STA for 22 of 31 transplant recipients from October 2009 to February 2011. (CR 660 – 61, 673 – 77, 681 - 85). As Mr. Klingsick's lung procurement and transplant occurred during the dates provide by STA, UTSWMC

9

subsequently identified him as a patient who was possibly affected by STA's preservation solution mixing error. (CR 696 - 97). On or about June 12, 2012, Appellees Klingsick sent their first written notice of any claim of liability to UTSWMC. (CR 699 - 702).

**F.    STA Acknowledgement of the Breach of the Standard of Care**

For lung procurements and transplants done by STA between October 2009 and February 2011, which included Mr. Klingsick's lung transplant, former STA CEO Cutler specifically testified that STA took responsibility for having the incorrect dosage in the preservation solution for the lungs received by Mr. Cummings and for failing to find this error. (CR 1421). Patricia Niles, the current President and CEO of STA, also acknowledged that STA breached the standard of care in over-buffering the Perfadex, that STA personnel were improperly mixing preservation fluid, that there are allegations that such error caused injury and death to the affected lung transplant recipients, and that at all times relevant to the issues in this case, STA did not notify UTSWMC of the dosage change. (CR 1747 – 51, 1758, 1777 – 79, 1781). These acknowledgements were reaffirmed by the testimony of other key STA officials. (CR 1824, 1827 – 28, 1831, 2098 – 99, 2103, 2108, 2152).

In addition, Dr. Levy testified that the incorrect mixing of transplant fluid was a result of STA employees following STA policy. (CR 1134 – 35, 1137 – 38, 1141, 1157). Dr. Levy explained that STA's faulty policy gave rise to the lawsuit, testifying:

192

Q. (By Mr. Giberson) Do you agree that all of these lawsuits arise from a single occurrence – STA's routine and repetitive adherence to their faulty (not updated) written policy and protocol? Do you agree with that or not?

MR. LYKINS: Objection, form.

A. See, I think the root cause was the policy wasn't changed when it should have been.

Q. Okay.

A. And - -

MR. LYKINS: You've answered his question. Wait for a question.

Q. I want to see if you agree with this statement: There is no evidence that at any time of any of the transplants made the basis of these

193

lawsuits such individuals who actually mixed the solutions for the transplants in question did so in a manner other than consistent with the then existing STA written policy and protocol.

Do you agree with that?

MR. LYKINS: Objection, form.

Subject to that, you may answer.

A. I do agree

Q. Would you agree with the statement that STA personnel, who actually mixed the solution used with organ recovery, were trained to and did follow the then existing written STA policy and protocol

11

regarding how much THAM to mix with Perfadex? Do you agree with that?

A. I do agree.

(CR 1160). Accordingly, based on the undisputed testimony of STA officials, STA is the one who was solely responsible for preservation solution mixing error that occurred in the lung procurement for Mr. Klingsick.

## SUMMARY OF ARGUMENT

In this appeal, the trial court erred in denying UTSWMC's Plea to the Jurisdiction based on sovereign immunity. Under the TTCA, Appellees are required to give notice of their claims within six (6) months of the date of the incident in question for there to be a waiver of UTSWMC's immunity. Additionally under the TTCA, the limited waiver only applies to claims that involve some negligent use of tangible personal property by a UTSWMC employee.

In the case of Mr. Klingsick's lung transplant, Appellees did not give formal notice of their claims within six (6) months of his transplant procedure on July 23, 2010. During the six months after this procedure, UTSWMC also did not have the subjective awareness of fault to provide it actual notice of Appellees' claims. In addition, the only tangible personal property alleged to have caused harm to Mr. Klingsick and Appellees was the lung preservation solution used to transport his donor lungs, which was not mixed or prepared by a UTSWMC employee. That

12

solution was mixed and prepared by a STA employee.

Consequently, Appellees claims do not waive UTSWMC's sovereign immunity under the TTCA. This failure deprived the trial court of subject-matter jurisdiction, requiring it to dismiss Appellees' suit in its entirety as UTSWMC's Plea to the Jurisdiction requested. As a result, the trial court's order denying UTSWMC's plea should be reversed and judgment should be rendered in UTSWMC's favor.

## ARGUMENT

### A. Standard of Review & Sovereign Immunity

It is a fundamental rule of Texas law that the State of Texas, its governmental units, and its officers may not be sued without the express consent of the Texas legislature. *Tex. Dept. of Trans. v. Lueck*, 290 S.W.3d 876, 880 (Tex. 2009); *Texas Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004); *TNRCC v. IT-Davy*, 74 S.W.3d 849, 853-54 (Tex. 2002); *Griffin v. Hawn*, 341 S.W.2d 151 (Tex. 1960); *Hosner v. DeYoung*, 1 Tex. 764 (1847). A trial court's jurisdiction is conferred by the Constitution and the statutes and a trial court without jurisdiction cannot render a valid judgment. *Miranda*, 133 S.W.3d at 226. Whether a trial court had subject-matter jurisdiction is a question of law and on appeal is reviewed under the *de novo* standard. *See id.* at 228; *IT-Davy*, 74 S.W.3d at 855. These are long-standing, well-established principles of Texas law.

13

A lack of a waiver of a State governmental unit's sovereign immunity deprives a trial court of subject-matter jurisdiction. *Miranda*, 133 S.W.3d at 225-26; *Tex. Dept. of Transp. v. Jones*, 8 S.W.3d 636, 639 (Tex. 1999). At the trial court, it is the plaintiff's burden to prove there is a waiver of sovereign immunity. *Miranda*, 133 S.W.3d at 226; *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex.2002). If a plaintiff's allegations and the jurisdictional evidence negate subject-matter jurisdiction, the trial court must dismiss the suit. *Texas A&M Univ. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007); *Miranda*, 133 S.W.3d at 226; *County of Cameron v. Brown*, 80 S.W.3d 549, 556–57 (Tex.2002); see also *City of North Richland Hills v. Friend*, 370 S.W.3d 369, 373 (Tex. 2012); *Tex. Dept. of Pub. Safety v. Petta*, 44 S.W.3d 575, 577 & 580 (Tex. 2001); *Harris County v. Cabazos*, 177 S.W.3d 105, 111–12 (Tex. App.-- Houston [1st Dist.] 2005, no pet.)(enlarging the scope of the waiver of sovereign immunity under the TTCA through artful pleading is <u>not</u> permitted).

Concerning tort actions and actions under the common law, the State of Texas, even if it has committed tortious acts, is immune from suit unless it gives its consent to be sued. *Miranda*, 133 S.W.3d at 224; see also *Franka v. Velasquez*, 332 S.W.3d 367, 369 (Tex. 2011); *Mission C.I.S.D. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008); see also *Dung Ngoc Huynh v. Washington*, 339 S.W.3d 309, 311 (Tex. App.—Dallas

14

2011, no pet.). Governmental units of the State, such as Appellant UTSWMC, enjoy the protection afforded by this sovereign immunity. *Lueck*, 290 S.W.3d at 880; *Univ. of Texas Southwestern Med. Ctr. v. Loutzenhiser*, 140 S.W.3d 351, 353-54 & FN 5 (Tex. 2004)(acknowledging that UTSWMC is a State governmental unit under the TTCA).[1] The Texas Tort Claims Act (TTCA) is the only statute that provides a potential waiver of this immunity and is applicable in limited circumstances, subject to further limitations, exclusions, and exceptions. Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001 *et seq.* (West 2015). This Court must look to the terms of the TTCA to determine the scope of the waiver and then consider the particular facts of the case to determine whether it comes within that scope. *Texas Dept. of Criminal Justice v. Miller*, 51 S.W.3d 583, 586-87 (Tex. 2001). And unless and until the Legislature states otherwise, there are absolutely no other waivers of sovereign immunity which can arise against a State agency for tort causes of action. *Franka*, 332 S.W.3d at 369; *Garcia*, 253 S.W.3d at 659; *Washington*, 339 S.W.3d at 311.

In this case, Appellees fail to meet the requirements for waiver under TTCA §§ 101.101 (notice) and 101.021 (use of tangible personal property). The true allegations of Appellees and the evidence clearly negates a waiver of Appellant

---

[1] *See* Tex. Civ. Prac. & Rem.Code § 101.001(3)(A); Tex. Educ. Code Ann. §§ 65.02(a)(7) & 74.101 (West 2014)(App. C, D & E)(UTSWMC is a component of the University of Texas System and under the control and management of the Board of Regents).

UTSWMC's sovereign immunity.

**ISSUE I:** **D**ID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN DENYING UTSWMC'S PLEA TO THE JURISDICTION WHEN **A**PPELLEES DID NOT GIVE UTSWMC FORMAL NOTICE OF THEIR CLAIMS AND UTSWMC DID NOT HAVE ACTUAL NOTICE OF THEIR CLAIMS WITHIN SIX MONTHS FROM THE DATE OF INCIDENT**?**

**A.** **Quick Answer**

Yes. In this case, Appellees did not give formal notice of their claims within six (6) months of his transplant procedure on July 23, 2010. In addition, during the six months after Mr. Klingsick's procedure, UTSWMC did not have the subjective awareness of fault required to provide it with actual notice of Appellees' claims. Accordingly, the trial court should have dismissed Appellees' suit against UTSWMC.

**B.** **The Statute: TTCA Notice Requirement for a Waiver of Sovereign Immunity**

The Notice of Claim provision in the TTCA provides in its entirety:

(a)  A governmental unit is entitled to **receive** notice of a claim against it under this chapter **not later than six (6) months after the day the incident** giving rise to the claim occurred. The notice must reasonably describe:
   (1)  The damage or injury claims;
   (2)  The time and place of the incident; and
   (3)  The incident.

(b)   A city's charter and ordinance provisions requiring notice within a charter period permitted by law are ratified and approved.

(c) The notice requirements provided or ratified and approved by Subsections (a) and (b) do not apply if the governmental unit has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged.

Tex. Civ. Prac. & Rem. Code § 101.101 (West 2015)(emphasis added)(App. F). This notice requirement is jurisdictional and without compliance, UTSWMC's sovereign immunity is not waived. Tex. Govt. Code Ann. §311.034 (West 2015) ("Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity.")(App. G); *Colquitt v. Brazoria County*, 324 S.W.3d 539, 542-43 (Tex. 2010).

In this case, it is undisputed that Appellees did not provide written notice of their claim within six (6) months of Mr. Klingsick's lung transplant procedure and they asserted before the trial court that they are relying on the actual notice of claim portion of the TTCA.[2] (RR 17-25, 41; CR699 - 702, Klingsick's Notice of Claim Letter, dated June 12, 2012, Exh. P). However, Appellees' assertion that UTSWMC had actual knowledge is negated by the evidence in this case.

## C. The Texas Supreme Court & Actual Notice

Concerning actual notice under §101.101(c), the Texas Supreme Court has

---

[2] The discovery rule does not apply to claims under the TTCA *Timmons v. Univ. Med. Ctr.*, 331 S.W.3d 840, 848 (Tex. App.—Amarillo 2011, no pet.); *Streetman v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 952 S.W.2d 53, 55–56 (Tex.App.-- San Antonio 1997, writ denied); *Putthoff v. Ancrum*, 934 S.W.2d 164, 174 (Tex. App.—Fort Worth 1996, writ denied).

issued three (3) landmark opinions which pertain to the TTCA's notice of claim's actual notice provision and are pertinent to this case. The first landmark case is *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). The *Cathey* court held that actual notice exists only when the governmental unit, within six (6) months of the act upon which the claim is based, has *knowledge* of (1) the death or injury, (2*)* **its alleged fault producing or contributing to death or injury,** and (3) the names and addresses of all persons involved. *Cathey*, 900 S.W.2d at 341 (emphasis added)(approving of *Bourne v. Nueces County Hosp. Dist.,* 749 W.W.2d 630, 632-33 (Tex. App.—Corpus Christi 1988, writ denied)). In *Cathey*, the Supreme Court held that medical records that merely report the event or procedures on a patient of the complained of event, fails to adequately convey to the hospital its possible culpability for any injury to the plaintiff. *Cathey,* 900 S.W.2d at 342.

The second landmark Supreme Court case is *Tex. Dep't of Criminal Justice v. Simons,* 140 S.W.3d 338 (Tex. 2004). The *Simons* court held:

> [W]e hold that actual notice under section 101.101(c) requires that a governmental unit have knowledge of the information it is entitled to be given under section 101.101(a) and a **subjective awareness that its fault produced or contributed to the claimed injury.**

*Simons,* 140 S.W.3d at 348 (emphasis added). The *Simons* court clarified that the notice of claim provision "includes subjective awareness of its fault, as ultimately alleged by the claimant, in producing or contributing to the claimed injury." *See id.*

at 347. Merely investigating an event is insufficient to provide actual notice of a claim. *See id.* at 348; see also *Univ. of Texas Southwestern Med. Ctr. v. Arancibia*, 324 S.W.3d 544, 549-550 (Tex. 2010)(evidence and knowledge of a "bad result," in and of itself, is not enough for subjective awareness of fault).

The third landmark Supreme Court case is *City of Dallas v. Carbajal*, 324 S.W.3d 537 (Tex. 2010). In *Carbajal*, the Supreme Court held that a "police report" on an improperly blocked roadway, "did not provide the City with subjective awareness of fault because it did not even imply, let alone expressly state, that the City was at fault." *Id.* at 539. In this case, the Dallas Police report in question reported that the plaintiff had stated that she saw barricades, but none were blocking her way into the freeway. *See id.* at 538. As a result, the police report stated plaintiff drove onto the unblocked freeway and into an excavated gap of the road. *See id*. The police report also contained the officer's observation that there were no barricades blocking the freeway entrance. *See id.* Additionally, the report did not indicate who was responsible for the missing barricades or rule out "the possibility that a private contractor or another governmental entity (such as the county or state) could have been responsible for" the missing barricades. *Id.* at 539. Accordingly, the *Carbajal* court held that pursuant to its decision in *Simmons*, the City of Dallas did not have the specific subjective awareness of fault required for actual notice because the

19

police report did not indicate that the City was at fault. *See id.*

**D.** ***McQueen* Opinion & Actual Notice in Health Care Liability Cases**

Since *Carbajal*, the Houston Court of Appeals in health care liability cases has also found that the health care provider must have subjective awareness of its specific fault beyond the medical records or a "bad result." *Univ. of Texas Health Sci. Ctr. at Houston v. McQueen*, 431 S.W.750, 761 (Tex. App.—Houston [14th Dist.] 2014, no pet.). As the *McQueen* court stated, for there to be actual notice to the governmental unit:

> [T]here must exist **something in the circumstances to provide a subjective signal to the governmental unit** within the six-month period that there might be a claim… There must be something more than the mere fact of a "bad result," even one that perhaps a prudent person or physician would have investigated.

*McQueen*, 431 S.W.3d at 761 (emphasis added). This case is on-point with Appellees Klingsick's suit.

In *McQueen*, the evidence consisted of medical records and a UTHSCH physician's note in a progress report of a "'bowel injury during hysterectomy' that would delay [plaintiff's] recovery." *Id.* at 760. After the procedure in question, risk management was not notified, no supervising physician was given a "heads up" about the incident, and no UTHSCH review or investigation was done, "much less one leading to any assessment by UTHSCH that any particular error, even if

20

'technical,' probably had occurred or that any portion of Teresa's care 'contributed' to her injury." *Id*. Additionally, no review concerning the "standard of care" occurred during the six months after the procedure. *See id*. With regard to the testimony of the UTHSCH physician who provided the care in question, she acknowledged "that the most likely possible cause of [plaintiff's] bowel injury was a thermal injury from the cautery tools, although she did not see or note any direct contact of any tool to [plaintiff's] bowel or any coupling between tools." *Id*. She testified that she did not see this injury during the procedure and "that if she had noted a bowel injury during the hysterectomy, she would have documented it and called in general surgery to evaluate the bowel." *Id*. The physician also testified that she "would not change anything she did during the procedure," and that "she did not believe that her use of any of the cautery tools fell below the standard of care." *Id*. As a result, the Houston Court of Appeals ruled that this evidence did not show that UTHSCH had a "subjective signal" of fault within the six month notice period and there was no waiver of UTHSCH's sovereign immunity under the TTCA. *See id*. at 761 & 762.

E.    **UTSWMC Did Not Have the Required "Subjective Signal"**

In the case before the Court, the trial court denied UTSWMC's plea to the jurisdiction based on Appellees' assertion that within six (6) months of Mr.

Klingsick's surgery, a UTSWMC employee had the requisite subjective awareness of its fault. (CR 2459-60)(RR 17-25, 41). The trial court's ruling, however, completely ignores the evidence in the record.

Appellees' claims against UTSWMC arise from Mr. Klingsick's lung transplant procedure that occurred on July 23, 2010. Hence, at the latest, UTSWMC was entitled to notice of Appellees' claims under the TTCA on or before January 23, 2011. The evidence shows that the first time UTSWMC knew that Mr. Klingsick was one of the patients whose transplanted lungs had been transported in the improperly mixed STA preservation solution was on July 13, 2011. (CR 660 – 61, 673 – 89). This occurred when STA informed UTSWMC of the date ranges of the transplant patients affected. (CR 660 – 61, 681 - 85). Prior to this date, UTSWMC could not identify Mr. Klingsick as an affected patient and did not have any knowledge that Mr. Klingsick's transplanted lungs were preserved in the improperly mixed and prepared solution. (CR 673 - 77).

But, in attempt to confer jurisdiction on the trial court, Appellees argued at the trial court that the knowledge Dr. Peltz had of an inconclusive result of a blood-gas analyzer test of the STA preservation solution on January 10, 2011, while performing a lung transplant procedure at Baylor Medical Center for a Baylor Medical Center patient, gave UTSWMC subjective awareness of its fault within the

six (6) month notice period. This incident failed to provide UTSWMC with actual notice of the Klingsicks' claims for multiple reasons.

At deposition, Dr. Peltz testified the January 10, 2011, he performed the lung procurement and transplant for Baylor Medical Center on a Baylor patient, not for or at UTSWMC or on a UTSWMC patient. (CR 2250). He testified that after that transplant, although the blood-gas analyzer returned an out-of-range reading for the sample of preservation solution he tested, his concern was that the preservation solution may have been too acidic, having a pH level below the optimal range because the metabolism of the lungs produces more acid over time, not above, as was later determined to be the problem. (CR 2251 - 52). He testified that he did not know how the blood-gas analyzer was calibrated and therefore the out-of-range reading was not indicative of anything specifically wrong. (CR 2252 - 55). Although he later mentioned this reading to his colleagues at UTSWMC in passing, Dr. Peltz testified this result did not motivate him to pursue the matter any further as "[t]here was no reason to believe there was anything incorrect about the way the preservation solution was made." (CR 2252). He testified he subjectively had no reason to believe that there was anything wrong with the preservation solution or how it was mixed and prepared by STA at that time. (CR 2252, 2276). Additionally, all of the undisputed testimony in the record conclusively established that the preservation

solution in question was mixed and prepared by a STA employee, not by Dr. Peltz or any other UTSWMC employee. (CR 974 – 75, 1897 – 98, 1902, 2274).

Consequently, all of this evidence conclusively negates Appellees' allegation that UTSWMC had the subjective awareness of fault necessary to meet the requirements for actual notice delineated by the Texas Supreme Court and the *McQueen* opinion. *Carbajal*, 324 S.W.3d at 539; *Simons,* 140 S.W.3d at 348; *Cathey*, 900 S.W.2d at 341; *McQueen*, 431 S.W.3d at 761. The knowledge that Dr. Peltz had on or before January 23, 2011, does not equate to a "subjective signal" of fault on behalf of UTSWMC as a matter of law. *McQueen*, 431 S.W.3d at 761 & 762.

## F.     Conclusion

Based on the evidence in this case, Appellees failed to provide UTSWMC with notice of their claims as required by Tex. Civ. Prac. & Rem. Code § 101.101. This failure prevents a waiver of UTSWMC's sovereign immunity and deprived the trial court of subject-matter jurisdiction. *Simons,* 140 S.W.3d at 348; *Cathey*, 900 S.W.2d at 341; *McQueen*, 431 S.W.3d at 761 & 762. Therefore, the trial court should have dismissed Appellees' suit against UTSWMC and this Court should reverse and render judgment in UTSWCM's favor. *See id.*

**ISSSUE II: DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN DENYING UTSWMC'S PLEA TO THE JURISDICTION WHEN NO TANGIBLE PERSONAL PROPERTY WAS NEGLIGENTLY USED BY ITS EMPLOYEES DURING THE ALLEGED NEGLIGENT MEDICAL TREATMENT IN QUESTION?**

**A.    Quick Answer**

Yes. Appellees cannot show that any UTSWMC employees negligently used any tangible personal property that caused injury to Mr. Klingsick. The true culprit in this case, the improper mixing and preparing of the lung preservation solution for Mr. Klingsick's donor lungs was completed by STA's employees, not UTSWMC's. In addition, the other allegations made by Appellees fail to assert a true use of tangible personal property caused injury to Mr. Klingsick. As a result, there is no applicable waiver of sovereign under the TTCA that allows Appellees to maintain their suit against UTSWMC and the trial court should have dismissed their claims in their entirety.

**B.    TTCA §101.021's Waiver of Sovereign Immunity Requirements**

Under the TTCA, the Texas Legislature and Supreme Court have made clear that the waiver of immunity applies in <u>only</u> three (3) specific scenarios where damages are proximately caused by:

1)    the operation or use of a motor driven vehicle or equipment;
2)    a condition or use of tangible property; or
3)    premises defects.

25

Tex. Civ. Prac. & Rem. Code Ann. §§ 101.021 & 101.022 (West 2015)(App. H & I); *City of Corsicana v. Stewart*, 249 S.W.3d 412, 413 (Tex. 2008); *Texas Dept. of Transp. v. Able*, 35 S.W.3d 608, 611 (Tex. 2000); *Dallas Cty. MHMR v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998). At the trial court, it is the plaintiff's burden to establish the TTCA waives sovereign immunity. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003).

In a suit brought under the TTCA, a claimant can only proceed under one theory of liability for recovery. *Miranda*, 133 S.W.3d at 233 (citing *State v. Tennison*, 509 S.W.2d 560, 562 (Tex. 1974))(the TTCA does not create two separate grounds of liability); *City of Houston v. Harris*, 192 S.W.3d 167, 174 (Tex. App.–Houston [14th Dist.] 2006, no pet.). In this case, based on Appellees' allegations and the jurisdictional evidence, they could only proceed under a use of tangible personal property theory, which the evidence does not establish as actionable. (CR 1520 - 24).

**C.** **Appellees' Negligent Use Allegations Concerning Mr. Klingsick's Lung Transplant**

Appellees alleged that employees of UTSWMC, "negligently used or misused the tangible personal property, including but not limited to the improperly mixed fluid used to transport the lungs that were ultimately transplanted into William Klingsick and the lungs themselves that were implanted into Mr. Klingsick." (CR

26

1523 - 24). More specifically, they alleged the negligence included the following:

a. failing to preserve and/or maintain organs viable for William Klingsick as an organ transplant recipient;

b. failing to check the pH level of the organ transporting fluid before performing the operation at issue;

c. failing to provide a healthy and viable organ to William Klingsick as an organ transplant recipient;

d. negligently instructing Southwest Transplant Alliance how to use the transplant solution;

e. negligently instructing Southwest Transplant Alliance on how to use the lungs in question;

f. failing to follow appropriate surgery procedures;

g. failing to properly train and supervise its staff;

h. allowing untrained and/or unqualified staff to care and treat William Klingsick;

i. failing to maintain proper written procedures governing transplanted organs;

j. instructing Southwest Transplant Alliance to erroneously mix Perfadex; and

k. negligently using the lungs and/or transplant solution in question.

(CR 1522 - 23). Appellees allege these acts or omissions of negligence proximately caused injuries and damages to them and Mr. Klingsick. (CR 1523 - 24). In summary, their claims focus on allegations of a misuse of the lungs, failure to take action, negligent hiring, training and supervising, misuse of information and

negligent medical judgment.

The conclusive evidence established in the record above demonstrates all actions and omissions concerning the mixing and preparing of the lung preservation solution were done by a STA employee, and not that of UTSWMC. As a result, allegations concerning the lungs do not legally apply to UTSWMC. And all of the other alleged acts or omissions did not involve a use of tangible personal property.

**D.      The TTCA Waiver of Immunity Requires a Negligent Use of Tangible Personal Property**

Section 101.021(2) waives immunity for a use of personal property only if the governmental unit, through its employee(s), is itself the user. Tex. Civ. Prac. & Rem. Code Ann §§ 101.001(2) & 101.021; *San Antonio State Hosp. v. Cowan,* 128 S.W.3d 244, 246 (Tex. 2004). "Use" means "to put or bring into action or service; to employ for or apply to a given purpose." *Id. Texas Dep't of Criminal Justice v. Miller,* 51 S.W.3d 583, 587 (Tex. 2001). Concerning proximate causation, the using of the tangible personal property must have actually caused the injury or death, mere involvement of the tangible property is not enuogh. *Miller,* 51 S.W.3d at 588; see also *Cowan*, 128 S.W.3d at 245-46; *Univ. of Texas Med. Branch v. York,* 871 S.W.2d 175, 178 n. 5 (Tex. 1994). And concerning health care liability claims, the Texas Supreme Court stated in *Miller:*

There cannot be a waiver of sovereign immunity in every case in which medical treatment is provided by a public facility. Doctors in state medical facilities use some form of tangible personal property nearly every time they treat a patient. If there is waiver in all those cases, the waiver of immunity is virtually unrestricted, which is not what the Legislature intended.

*Miller,* 51 S.W.3d at 587 (citing *Kerrville State Hospital v. Clark,* 923 S.W. 2d. 582, 586 (Tex. 1996)). Accordingly, a negligent use of tangible personal property is required to waive sovereign immunity. *See id.*

As a result of this negligent use of tangible personal property requirement under the TTCA, allegations that assert a non-use or use of intangible property do not properly assert a waiver of immunity. Allegations and evidence of a misuse of information do not waive sovereign immunity. *Univ. of Texas Medical Branch at Galveston v. York*, 871 S.W.2d 175, 178 (Tex. 1994); *Univ. of Texas Medical Branch v. Kai Huo Qi,* 402 S.W.3d 374, 388 (Tex. App.-- Houston [14th Dist.] 2013, no pet.); *Univ. of Texas M.D. Anderson Cancer Ctr. v. King*, 329 S.W.3d 876, 880 (Tex. App.—Houston [14th Dist.] 2010); *Arnold v. Univ. of Texas Southwestern Med. Ctr.*, 279 S.W.3d 464, 469 (Tex. App.—Dallas 2009, no pet.)(citing *Gipson v. City of Dallas*, 247 S.W.3d 465, 471 (Tex. App.—Dallas 2008, pet. denied)); *Texas Tech Health Sci. Ctr. v. Ward*, 280 S.W.3d 345, 356 (Tex. App.– Amarillo 2008, pet. denied)(all holding that misuse of medical information is not a use of property under the TTCA). Allegations and evidence of negligent judgment, errors in medical

judgment in assessing medical conditions, failure to act, failure to follow accepted medical treatment practices of the standard of care, or a failure to do a proper medical investigation also do not fall under the TTCA waiver. *Clark*, 923 S.W.2d at 584; *Qi,* 402 S.W.3d at 388; *King*, 329 S.W.3d at 880-81; *Univ. of Texas Medical Branch at Galveston v. Tatum*, 389 S.W.3d 457, 462 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *Kamel v. Univ. of Texas Health Sci. Ctr. at Houston*, 333 S.W.3d 676, 686 (Tex. App.—Houston [1st Dist.] 2010, pet. denied); *Arnold*, 279 S.W.3d at 468-69; *Redden v. Denton Cty*, 335 S.W.3d 743, 751 (Tex. App.– Fort Worth 2011, no pet. h.); *Somervell County Healthcare Authority v. Sanders,* 169 S.W.3d 724, 727 - 28 (Tex. App.-- Waco 2006, no pet.)(all holding that claims of negligence in judgment, human error, failure to act, follow proper medical procedure or investigate do not assert a use of tangible personal property). And allegations and evidence of negligent hiring, training and supervising do not fall under the applicable waiver of sovereign immunity. *Texas A&M Univ. v. Bishop*, 156 S.W.3d 580, 583 (Tex. 2005); *Whitley*, 104 S.W.3d at 543; *Kamel*, 333 S.W.3d at 686; *King*, 329 S.W.3d at 881; *El Paso MHMR v. Crissman*, 241 S.W.3d 582 (Tex. App.—El Paso 2007, no pet.)(citing *Petta*, 44 S.W.3d at 581); *Univ. of Tex. Health Sci. Ctr. v. Schroeder*, 190 S.W.3d 102 (Tex. App.-- Houston [1st Dist.] 2005, no pet.); *Dallas Area Rapid Trans. v. Edwards*, 171 S.W.3d 584, 587-88 (Tex. App.—Dallas 2005, pet. denied); *Texas*

*Dept. of Crim. Just. v. Hawkins*, 169 S.W.3d 529, 533 (Tex. App.—Dallas 2005, no pet.); *City of Garland v. Rivera*, 146 S.W.3d 334, 338-39 (Tex. App.—Dallas 2004, no pet.)(all holding that claims of negligent hiring, training and supervising do not properly assert a use of tangible personal property under the TTCA).

The opinion that is instructive to this case is *Arnold*. *Arnold v. Univ. of Texas Southwestern Med. Ctr.*, 279 S.W.3d 464, 468-69 (Tex. App.—Dallas 2009, no pet.). In *Arnold*, the plaintiff sued UTSWMC for one of its physician's alleged negligence in performing a breast augmentation procedure. *See id.* at 468. Plaintiff's allegations in that case included a failure to do a proper pre-surgery investigation, respond to post-surgery concerns, failure to document the proper size of the replacement implants needed, and the use of the larger implants "deformed her breasts," causing injury to her. *See id.* 468-470. Upon closer review, the Court found that plaintiff's allegations were truly of errors in judgment (miscalculation or misdiagnosis) and a misuse of information. *See id.* As a result, the Court stated:

> [b]ecause the true substance of the Arnolds' pleadings is that [the UTSWMC surgeon] miscalculated or misdiagnosed the necessary size of replacement breast implants, the fact that the pleadings also identify a piece of tangible personal property used during the procedure does not affect our decision that this is not a claim for the negligent use of tangible personal property.

*Id*. Accordingly, unless Appellees Klingsick could prove an employee of UTSWMC negligently used tangible personal property concerning Mr. Klingsick's lung

31

transplant, the TTCA waiver of sovereign immunity does not apply. The true allegations of Appellees and the evidence in the record fail to implicate the TTCA's waiver.

**E.      Appellees' True Allegations Fail to Assert a Waiver of Sovereign Immunity**

Upon review of the gravamen of Appellees' allegations and evidence, their claims focus on the negligent mixing and preparing of the lung preservation solution and the failures to investigate, discover or prevent this mistake. (CR 1523 - 24; P's Pet. 13.01-13.02). Along those lines, Appellees' list of failures in not discovering the improper mixing and preparation of the solution, or taking other action, aim directly at UTSWMC's failure in hiring, training and supervising its employees as well as a failure to act, misuse of information and negligent medical judgment. All of these allegations fail as a matter of law.

This case truly focuses on the negligent preparation of lung preservation solution, which UTSWMC did not mix or prepare. It is undisputed the preservation solution in question for Mr. Klingsick's lung transplant was mixed and prepared solely by STA employees. Accordingly, all of Appellees' allegations concerning the lung preservation solution fail as a matter of law.

Turning to the remaining allegations made by Appellees against UTSWMC, the failure to act and failure to properly hire, train and supervise its employees, these

claims also fail as a matter of law. Additionally, the other allegations that assert a failure to act, misuse of information and negligent medical judgment also fail. The numerous cases cited above from the Texas Supreme Court and the Courts of Appeals has clearly established such allegations do not implicate the TTCA's limited waiver of sovereign immunity and are barred as a matter of law.

## F.    Conclusion

Based on the allegations and the evidence in the record, Appellees did not prove the limited waiver of sovereign immunity under the TTCA applies to their health liability claims against UTSWMC. No alleged negligent use of tangible personal property by UTSWMC's employees caused injury to Mr. Klingsick or Appellees. This failure deprived the trial court of subject-matter jurisdiction. As a result, the trial court committed error when it did not grant UTSWMC's Plea to the Jurisdiction on these same grounds. This Court should reverse the trial court's denial of the Plea and render judgment in favor of UTSWMC, dismissing Appellees' case in its entirety.

## **PRAYER**

WHEREFORE, for the reasons stated above, Appellant UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER prays that this Court reverse the trial courts denial of its Plea to the Jurisdiction and render judgment that Appellees'

suit be dismissed in its entirety. Appellant further prays for such other and further

relief, both at law and in equity, to which it may show itself justly entitled.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

KARA L. KENNEDY
Chief, Tort Litigation Division

/s/ *Jason Warner*

JASON WARNER
Assistant Attorney General
State Bar No. 24028112
Tort Litigation Division, MC-030
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2197
FAX: (512) 457-4430
Jason.warner@texasattorneygeneral.gov
*Counsel for Appellant*

# CERTIFICATE OF COMPLIANCE

I hereby certify that this **Appellant's Brief** contains 7,484 computer generated words, as calculated by Microsoft Word 2013, in accordance with Tex. R. App. P. 9.4.

/s/ *Jason Warner*

JASON WARNER
Assistant Attorney General

# CERTIFICATE OF SERVICE

I do hereby certify compliance with Tex. R. Civ. P. 21. A true and correct copy of the foregoing instrument has been served on all counsel, by electronic transmission to the electronic mail address on file with the electronic filing manager Rule 21a(1). If a party has not designated an electronic mail address with the electronic filing manager, the party was served a true and correct copy of the foregoing instrument in person, by mail, by commercial delivery service by fax or by email, or by such other manner as the Court in its discretion may direct. Rule 21a(2). Service was made on all parties as provided on April 30, 2015.

Andrew B. Sommerman
SOMMERMAN & QUESADA, L.L.P.
3811 Turtle Creek Boulevard, Suite 1400
Dallas, TX 75219-4461
214.720.0720 - phone
214.720.0184 - fax
State Bar No. 18842150
andrew@textrial.com
*Attorney for Appellees*

Gary Lykins
THE BERRY FIRM, P.L.L.C.
1412 Main Street, Suite 2300
Dallas, TX 75202
214.915.9806 – direct no.
214.752.8250 – fax
State Bar No. 12715600
lykins@berryfirm.com
*Attorney for Non-Party Southwest Transplant Alliance*

Tim Ryan
SCHELL COOLEY LLP
15455 Dallas Parkway, Suite 550
Addison, TX 75001
(214) 665-2005 – phone
(214) 754-0060 – Fax
State Bar No. 17483600
tryan@schellcooley.com
*Attorney for Non-Party Vitrolife, Inc.*

/s/ *Jason Warner*

JASON WARNER
Assistant Attorney General

# APPENDIX

**TAB**

Trial Court's Order denying Appellant's Plea to the Jurisdiction, dated March 1, 2015....................................................................................A

TEX. CIV. PRAC. & REM. CODE §51.014(a)(8) ........................................B

TEX. CIV. PRAC. & REM. CODE §101.001(3)(a) .......................................C

TEX. EDUC. CODE §65.02(a)(7) .............................................................D

TEX. EDUC. CODE §74.101 .................................................................E

TEX. CIV. PRAC. & REM. CODE §101.101 ..............................................F

TEX. GOVT. CODE §311.034 ................................................................G

TEX. CIV. PRAC. & REM. CODE §101.021 ..............................................H

TEX. CIV. PRAC. & REM. CODE §101.022................................................I

# APPENDIX "A"

4660
000562

DC-12-07946

| | | |
|---|---|---|
| VERBA KLINGSICK, DIANA KLINGSICK | § | IN THE DISTRICT COURT OF |
| AND JANA CARRASCO, INDIVIDUALLY | § | |
| AND ON BEHALF OF THE ESTATE OF | § | |
| WILLIAM R. KLINGSICK, DECEASED | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | DALLAS COUNTY, TEXAS |
| | § | |
| SOUTHWEST TRANSPLANT ALLIANCE, | § | |
| THE UNIVERSITY OF TEXAS | § | |
| SOUTHWESTERN MEDICAL CENTER, | § | |
| and VITROLIFE, INC. | § | |
| Defendants. | § | 95th JUDICIAL DISTRICT |

### ORDER ON PLAINTIFFS' MOTION FOR SANCTIONS AGAINST THE UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER AND DEFENDANT'S PLEA TO THE JURISDICTION, MOTION FOR CONTINUANCE, AND MOTION TO TRANSFER PLAINTIFFS' MOTION FOR SANCTIONS

On Friday, February 13, 2013 the Court heard the following motions and plea: (1) Plaintiffs' Motion to Enforce Order and for Sanctions Against Defendant the University of Texas Southwestern Medical Center; (2) Defendant the University of Texas Southwestern Medical Center's Objections to Filing and Emergency Motion to Transfer Plaintiff's [sic] Motion to Enforce Order and for Sanctions to Consolidated Case; (3) Defendant the University of Texas Southwestern Medical Center's Motion for Continuance of Plaintiffs' Motion to Enforce Order and for Sanctions; and (4) the University of Texas Southwestern Medical Center's Plea to the Jurisdiction. The Court has heard argument by counsel and read the motions and briefs in support of the parties' positions.

The Court therefore ORDERS, ADJUDGES, and DECREES the following:

1. Plaintiff's Motion to Enforce Order and for Sanctions against Defendant the University of Texas Southwestern Medical Center is **CARRIED WITH THE CASE;**

2. Defendant the University of Texas Southwestern Medical Center's Objections to Filing and Emergency Motion to Transfer Plaintiff's [sic] Motion to Enforce Order and for Sanctions to Consolidated Case is **DENIED;**

3. Defendant the University of Texas Southwestern Medical Center's Motion for Continuance of Plaintiffs' Motion to Enforce Order and for Sanctions is **DENIED;** and

**ORDER ON PLAINTIFFS' MOTION FOR SANCTIONS AND RELATED DEFENSE MOTIONS AND DEFENDANT'S PLEA TO THE JURISDICTION**         **PAGE1**

APPENDIX "A"

4. the University of Texas Southwestern Medical Center's Plea to the Jurisdiction is **DENIED.**

SIGNED this 1st th day of March, 2015.

_____
JUDGE PRESIDING

# APPENDIX "B"



**c**

**Effective: September 1, 2011**

Vernon's Texas Statutes and Codes Annotated Currentness
  Civil Practice and Remedies Code (Refs & Annos)
    Title 2. Trial, Judgment, and Appeal
      Subtitle D. Appeals
        ⌐▤ Chapter 51. Appeals
          ⌐▤ Subchapter B. Appeals from County or District Court
          →→ § 51.014. Appeal from Interlocutory Order

(a) A person may appeal from an interlocutory order of a district court, county court at law, or county court that:

  (1) appoints a receiver or trustee;

  (2) overrules a motion to vacate an order that appoints a receiver or trustee;

  (3) certifies or refuses to certify a class in a suit brought under Rule 42 of the Texas Rules of Civil Procedure;

  (4) grants or refuses a temporary injunction or grants or overrules a motion to dissolve a temporary injunction as provided by Chapter 65;

  (5) denies a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state;

  (6) denies a motion for summary judgment that is based in whole or in part upon a claim against or defense by a member of the electronic or print media, acting in such capacity, or a person whose communication appears in or is published by the electronic or print media, arising under the free speech or free press clause of the First Amendment to the United States Constitution, or Article I, Section 8, of the Texas Constitution, or Chapter 73;

  (7) grants or denies the special appearance of a defendant under Rule 120a, Texas Rules of Civil Procedure, except in a suit brought under the Family Code;

  (8) grants or denies a plea to the jurisdiction by a governmental unit as that term is defined in Section 101.001;

  (9) denies all or part of the relief sought by a motion under Section 74. 351(b), except that an appeal may not be taken from an order granting an extension under Section 74.351;

  (10) grants relief sought by a motion under Section 74.351(l); or

  (11) denies a motion to dismiss filed under Section 90.007.

(b) An interlocutory appeal under Subsection (a), other than an appeal under Subsection (a)(4), stays the com-

# APPENDIX "B"

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

mencement of a trial in the trial court pending resolution of the appeal. An interlocutory appeal under Subsection (a)(3), (5), or (8) also stays all other proceedings in the trial court pending resolution of that appeal.

(c) A denial of a motion for summary judgment, special appearance, or plea to the jurisdiction described by Subsection (a)(5), (7), or (8) is not subject to the automatic stay under Subsection (b) unless the motion, special appearance, or plea to the jurisdiction is filed and requested for submission or hearing before the trial court not later than the later of:

   (1) a date set by the trial court in a scheduling order entered under the Texas Rules of Civil Procedure; or

   (2) the 180th day after the date the defendant files:

      (A) the original answer;

      (B) the first other responsive pleading to the plaintiff's petition; or

      (C) if the plaintiff files an amended pleading that alleges a new cause of action against the defendant and the defendant is able to raise a defense to the new cause of action under Subsection (a)(5), (7), or (8), the responsive pleading that raises that defense.

(d) On a party's motion or on its own initiative, a trial court in a civil action may, by written order, permit an appeal from an order that is not otherwise appealable if:

   (1) the order to be appealed involves a controlling question of law as to which there is a substantial ground for difference of opinion; and

   (2) an immediate appeal from the order may materially advance the ultimate termination of the litigation.

(d-1) Subsection (d) does not apply to an action brought under the Family Code.

(e) An appeal under Subsection (d) does not stay proceedings in the trial court unless:

   (1) the parties agree to a stay; or

   (2) the trial or appellate court orders a stay of the proceedings pending appeal.

(f) An appellate court may accept an appeal permitted by Subsection (d) if the appealing party, not later than the 15th day after the date the trial court signs the order to be appealed, files in the court of appeals having appellate jurisdiction over the action an application for interlocutory appeal explaining why an appeal is warranted under Subsection (d). If the court of appeals accepts the appeal, the appeal is governed by the procedures in the Texas Rules of Appellate Procedure for pursuing an accelerated appeal. The date the court of appeals enters the order accepting the appeal starts the time applicable to filing the notice of appeal.

CREDIT(S)

Acts 1985, 69th Leg., ch. 959, § 1, eff. Sept. 1, 1985. Amended by Acts 1987, 70th Leg., ch. 167, § 3.10, eff. Sept. 1, 1987; Acts 1989, 71st Leg., ch. 915, § 1, eff. June 14, 1989; Acts 1993, 73rd Leg., ch. 855, § 1, eff. Sept. 1, 1993; Acts 1997, 75th Leg., ch. 1296, § 1, eff. June 20, 1997; Acts 2001, 77th Leg., ch. 1389, § 1, eff. Sept. 1, 2001; Acts 2003, 78th Leg., ch. 204, § 1.03, eff. Sept. 1, 2003; Acts 2005, 79th Leg., ch. 97, § 5, eff. Sept. 1, 2005; Acts 2005, 79th Leg., ch. 1051, §§ 1, 2, eff. June 18, 2005; Acts 2011, 82nd Leg., ch. 203 (H.B. 274), § 3.01, eff. Sept. 1, 2011.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Current through the end of the 2011 Regular Session and First Called Session of the 82nd Legislature

(c) 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

# APPENDIX "C"




**Effective:[See Text Amendments]**

Vernon's Texas Statutes and Codes Annotated Currentness
  Civil Practice and Remedies Code (Refs & Annos)
    Title 5. Governmental Liability
      Chapter 101. Tort Claims (Refs & Annos)
        Subchapter A. General Provisions
          ➜ **§ 101.001. Definitions**

In this chapter:

(1) "Emergency service organization" means a volunteer fire department, rescue squad, or an emergency medical services provider that is:

  (A) operated by its members; and

  (B) exempt from state taxes by being listed as an exempt organization under Section 151.310 or 171.083, Tax Code.

(2) "Employee" means a person, including an officer or agent, who is in the paid service of a governmental unit by competent authority, but does not include an independent contractor, an agent or employee of an independent contractor, or a person who performs tasks the details of which the governmental unit does not have the legal right to control.

(3) "Governmental unit" means:

  (A) this state and all the several agencies of government that collectively constitute the government of this state, including other agencies bearing different designations, and all departments, bureaus, boards, commissions, offices, agencies, councils, and courts;

  (B) a political subdivision of this state, including any city, county, school district, junior college district, levee improvement district, drainage district, irrigation district, water improvement district, water control and improvement district, water control and preservation district, freshwater supply district, navigation district, conservation and reclamation district, soil conservation district, communication district, public health district, and river authority;

  (C) an emergency service organization; and

  (D) any other institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution.

(4) "Motor-driven equipment" does not include:

# APPENDIX "C"

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

(A) equipment used in connection with the operation of floodgates or water release equipment by river authorities created under the laws of this state; or

(B) medical equipment, such as iron lungs, located in hospitals.

(5) "Scope of employment" means the performance for a governmental unit of the duties of an employee's office or employment and includes being in or about the performance of a task lawfully assigned to an employee by competent authority.

(6) "State government" means an agency, board, commission, department, or office, other than a district or authority created under Article XVI, Section 59, of the Texas Constitution, that:

(A) was created by the constitution or a statute of this state; and

(B) has statewide jurisdiction.

CREDIT(S)

Acts 1985, 69th Leg., ch. 959, § 1, eff. Sept. 1, 1985. Amended by Acts 1987, 70th Leg., ch. 693, § 1, eff. June 19, 1987; Acts 1991, 72nd Leg., ch. 476, § 1, eff. Aug. 26, 1991; Acts 1995, 74th Leg., ch. 827, § 1, eff. Aug. 28, 1995; Acts 1997, 75th Leg., ch. 968, § 1, eff. Sept. 1, 1997.

Current through the end of the 2009 Regular and First Called Sessions of the 81st Legislature

(c) 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

# APPENDIX "D"

V.T.C.A., Education Code § 65.02

§ 65.02. Organization

Effective: September 1, 2013

Currentness

(a) The University of Texas System is composed of the following institutions and entities:

(1) The University of Texas at Arlington, including:

(A) The University of Texas Institute of Urban Studies at Arlington; and

(B) The University of Texas School of Nursing at Arlington;

(2) The University of Texas at Austin, including:

(A) The University of Texas Marine Science Institute;

(B) The University of Texas McDonald Observatory at Mount Locke; and

(C) The University of Texas School of Nursing at Austin;

(3) The University of Texas at Dallas;

(4) The University of Texas at El Paso, including The University of Texas School of Nursing at El Paso;

(5) The University of Texas of the Permian Basin;

(6) The University of Texas at San Antonio, including the University of Texas Institute of Texan Cultures at San Antonio;

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

APPENDIX "D"

(7) The University of Texas Southwestern Medical Center, including:

    (A) The University of Texas Southwestern Medical School at Dallas;

    (B) The University of Texas Southwestern Graduate School of Biomedical Sciences at Dallas; and

    (C) The University of Texas Southwestern Allied Health Sciences School at Dallas;

(8) The University of Texas Medical Branch at Galveston, including:

    (A) The University of Texas Medical School at Galveston;

    (B) The University of Texas Graduate School of Biomedical Sciences at Galveston;

    (C) The University of Texas School of Allied Health Sciences at Galveston;

    (D) The University of Texas Marine Biomedical Institute at Galveston;

    (E) The University of Texas Hospitals at Galveston; and

    (F) The University of Texas School of Nursing at Galveston;

(9) The University of Texas Health Science Center at Houston, including:

    (A) The University of Texas Medical School at Houston;

    (B) The University of Texas Dental Branch at Houston;

(C) The University of Texas Graduate School of Biomedical Sciences at Houston;

(D) The University of Texas School of Health Information Sciences at Houston;

(E) The University of Texas School of Public Health at Houston;

(F) The University of Texas Speech and Hearing Institute at Houston; and

(G) The University of Texas School of Nursing at Houston;

(10) The University of Texas Health Science Center at San Antonio, including:

(A) The University of Texas Medical School at San Antonio;

(B) The University of Texas Dental School at San Antonio;

(C) The University of Texas Graduate School of Biomedical Sciences at San Antonio;

(D) The University of Texas School of Allied Health Sciences at San Antonio; and

(E) The University of Texas School of Nursing at San Antonio;

(11) The University of Texas M. D. Anderson Cancer Center, including:

(A) The University of Texas M. D. Anderson Hospital;

(B) The University of Texas M. D. Anderson Tumor Institute; and

(C) The University of Texas M. D. Anderson Science Park; and

(12) The University of Texas Health Science Center--South Texas, including The University of Texas Medical School--South Texas, if established under Subchapter N[1], Chapter 74.

(b) The University of Texas System shall also be composed of such other institutions and entities as from time to time may be assigned by specific legislative act to the governance, control, jurisdiction, or management of The University of Texas System.

**Credits**

Added by Acts 1973, 63rd Leg., p. 1186, ch. 435, § 1, eff. Aug. 27, 1973. Amended by Acts 1989, 71st Leg., ch. 644, § 2, eff. June 14, 1989; Acts 2001, 77th Leg., ch. 325, § 1, eff. Sept. 1, 2001; Acts 2009, 81st Leg., ch. 1341, § 5, eff. June 19, 2009; Acts 2013, 83rd Leg., ch. 179 (H.B. 1844), § 9, eff. Sept. 1, 2013.

Notes of Decisions (6)

Footnotes

[1]

V.T.C.A., Education Code § 74.751 et seq.

V. T. C. A., Education Code § 65.02, TX EDUC § 65.02
Current through the end of the 2013 Third Called Session of the 83rd Legislature

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

# APPENDIX "E"

**V.T.C.A., Education Code § 74.101**

**§ 74.101. Component Institution**

**Effective: September 1, 2013**

Currentness

The University of Texas Southwestern Medical Center is a component institution of The University of Texas System under the management and control of the board of regents of The University of Texas System.

**Credits**

Acts 1971, 62nd Leg., p. 3182, ch. 1024, art. 1, § 1, eff. Sept. 1, 1971. Amended by Acts 1989, 71st Leg., ch. 644, § 9, eff. June 14, 1989; Acts 2013, 83rd Leg., ch. 179 (H.B. 1844), § 11, eff. Sept. 1, 2013.

V. T. C. A., Education Code § 74.101, TX EDUC § 74.101
Current through the end of the 2013 Third Called Session of the 83rd Legislature

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

APPENDIX "E"

# APPENDIX "F"

**V.T.C.A., Civil Practice & Remedies Code § 101.101**

### § 101.101. Notice

Currentness

(a) A governmental unit is entitled to receive notice of a claim against it under this chapter not later than six months after the day that the incident giving rise to the claim occurred. The notice must reasonably describe:

(1) the damage or injury claimed;

(2) the time and place of the incident; and

(3) the incident.

(b) A city's charter and ordinance provisions requiring notice within a charter period permitted by law are ratified and approved.

(c) The notice requirements provided or ratified and approved by Subsections (a) and (b) do not apply if the governmental unit has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged.

**Credits**

Acts 1985, 69th Leg., ch. 959, § 1, eff. Sept. 1, 1985.

Notes of Decisions (301)

V. T. C. A., Civil Practice & Remedies Code § 101.101, TX CIV PRAC & REM § 101.101
Current through the end of the 2013 Third Called Session of the 83rd Legislature

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

APPENDIX "F"

# APPENDIX "G"


C

**Effective: September 1, 2005**

Vernon's Texas Statutes and Codes Annotated Currentness
  Government Code (Refs & Annos)
    Title 3. Legislative Branch (Refs & Annos)
      Subtitle B. Legislation
        Chapter 311. Code Construction Act (Refs & Annos)
          Subchapter C. Construction of Statutes (Refs & Annos)
          ➡➡ **§ 311.034. Waiver of Sovereign Immunity**

In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language. In a statute, the use of "person," as defined by Section 311.005 to include governmental entities, does not indicate legislative intent to waive sovereign immunity unless the context of the statute indicates no other reasonable construction. Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity.

CREDIT(S)

Added by Acts 2001, 77th Leg., ch. 1158, § 8, eff. June 15, 2001. Amended by Acts 2005, 79th Leg., ch. 1150, § 1, eff. Sept. 1, 2005.

Current through the end of the 2011 Regular Session and First Called Session of the 82nd Legislature

(c) 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

APPENDIX "G"

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

# APPENDIX "H"





**Effective:[See Text Amendments]**

Vernon's Texas Statutes and Codes Annotated Currentness
  Civil Practice and Remedies Code (Refs & Annos)
    Title 5. Governmental Liability
      Chapter 101. Tort Claims (Refs & Annos)
        Subchapter B. Tort Liability of Governmental Units (Refs & Annos)
        ➡ **§ 101.021. Governmental Liability**

A governmental unit in the state is liable for:

  (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

    (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

    (B) the employee would be personally liable to the claimant according to Texas law; and

  (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

CREDIT(S)

Acts 1985, 69th Leg., ch. 959, § 1, eff. Sept. 1, 1985.

Current through the end of the 2009 Regular and First Called Sessions of the 81st Legislature

(c) 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

APPENDIX "H"

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

# APPENDIX "I"


**c**

**Effective: June 14, 2005**

Vernon's Texas Statutes and Codes Annotated Currentness
  Civil Practice and Remedies Code (Refs & Annos)
    Title 5. Governmental Liability
      Chapter 101. Tort Claims (Refs & Annos)
        Subchapter B. Tort Liability of Governmental Units (Refs & Annos)
        ➙ **§ 101.022. Duty Owed: Premise and Special Defects**

(a) Except as provided in Subsection (c), if a claim arises from a premise defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises.

(b) The limitation of duty in this section does not apply to the duty to warn of special defects such as excavations or obstructions on highways, roads, or streets or to the duty to warn of the absence, condition, or malfunction of traffic signs, signals, or warning devices as is required by Section 101.060.

(c) If a claim arises from a premise defect on a toll highway, road, or street, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property.

CREDIT(S)

Acts 1985, 69th Leg., ch. 959, § 1, eff. Sept. 1, 1985. Amended by Acts 2005, 79th Leg., ch. 281, § 2.88, eff. June 14, 2005.

Current through the end of the 2009 Regular and First Called Sessions of the 81st Legislature

(c) 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

APPENDIX "I"

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.